UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
------------------------------ x
                               :
  UNITED STATES OF AMERICA,     :
                  Plaintiff,    :      Criminal No.
                               :    3:16-CR-00227 (VLB)
            vs.                 :
                               :    January 31, 2017
  NICHOLAS MURPHY,              :
                  Defendant.    :
                               :
------------------------------ x
```

                                    Federal Building
                                    450 Main Street
                                    Hartford, Connecticut


STATUS CONFERENCE


(Transcription from Electronic Recording)


Held Before:

              THE HON. VANESSA L. BRYANT
              United States District Judge

              Transcription Services of
         FALZARANO COURT REPORTERS, LLC
                  4 Somerset Lane
                 Simsbury, CT  06070
                   860.651.0258
              www.falzaranocourtreporters.com

A P P E A R A N C E S:

<u>For the Plaintiff:</u>

        OFFICE OF THE UNITED STATES ATTORNEY
        450 Main Street - Room 328
        Hartford, Connecticut 06103
        860-947-1101
            BY:  NANCY V. GIFFORD, ESQ.
               Assistant U.S. Attorney

<u>For the Defendant:</u>

        PATTIS & SMITH, LLC
        383 Orange Street - First Floor
        New Haven, Connecticut  06511
            BY:  DANIEL M. ERWIN, ESQ.

1           (Proceedings commenced at 11:01 a.m.)

2

3           THE COURT:  Good morning.

4           MS. GIFFORD:  Good morning, your Honor.

5           MR. ERWIN:  Good morning.

6           THE COURT:  May we have the appearances

7       of counsel for the record.

8           MS. GIFFORD:  Good morning, your Honor.

9       Nancy Gifford on behalf of the Government.

10          MR. ERWIN:  Good morning, your Honor.

11      Dan Erwin on behalf of Mr. Murphy who is --

12          THE COURT:  I'm sorry, your last name?

13          MR. ERWIN:  Erwin.

14          THE COURT:  Erwin.

15          MR. ERWIN:  Dan Erwin.

16          THE COURT:  Thank you.

17          And Mr. Murphy, good morning.

18          THE DEFENDANT:  Good morning, ma'am.

19      Nicholas Murphy.

20          THE COURT:  Please be seated.

21          This is a status conference.  The Court

22      is attempting to determine its March

23      calendar.  This case is scheduled for trial

24      in March.  Your joint trial memorandum

25      deadline is imminent, and the Court needs to

1  inform the jury clerk which cases are going

2  forward so that we can begin the process of

3  assembling juries for those cases which are

4  -- that is a very time consuming process as

5  each judge has only one jury selection date

6  scheduled per month, and there are a number

7  of cases scheduled each month on that jury

8  selection date.  The Court has to inform the

9  jury clerk of how many individuals to summon

10  in for jury selection.  The Court must also

11  inform the jury clerk of the dates on which

12  -- and the nature of each of the trials so

13  that we can ensure that we have jurors that

14  are going to be available for each case.

15      So, in an effort to achieve those goals

16  efficiently I've asked you to join me today

17  to discuss the status of this case and the

18  likelihood that it will go forward as

19  scheduled on March 7th, and if not what

20  additional things need to be done, how much

21  time you contemplate that taking and whether

22  the Defendant is willing to sign a speedy

23  trial waiver.

24      So, Attorney Gifford, let me begin with

25  you.  Has the Government produced all the

1    discovery?

2    MS. GIFFORD:  We have, your Honor.  The

3    one possible piece would be that there is

4    DNA evidence in this case, and while we've

5    disclosed the report we haven't figured out

6    who from the state lab would be testifying

7    in that regard, so the CV related to that,

8    we can certainly get that in short order.

9    But in the meantime I've been in discussions

10   with Attorney Erwin relating to other

11   possible dispositions.  We're certainly not

12   there yet, but if there is a likelihood that

13   this case may resolve short of trial -- but

14   discovery is complete without one piece.

15   THE COURT:  And how long have you been

16   engaging in these discussions?  I don't want

17   to know the substance obviously but --

18   MS. GIFFORD:  Sure.  But we have -- I

19   think discovery was completed within 10 days

20   of presentment which was on the 3rd, so since

21   the 13th, sometimes in between there we've

22   been discussion on and off possible

23   resolutions.

24   THE COURT:  All right.

25   What's the Defense estimate of how long

1    it's going to take to determine whether the

2    case will resolve or go forward to trial?

3        MR. ERWIN:  The Government is correct.

4    I think we have --

5        THE COURT:  Could you direct the mic so

6    that you're speaking into it?

7        MR. ERWIN:  Sure thing.

8        I agree with the Government.  It does

9    appear we've received all of its discovery.

10   We're still investigating an angle or two

11   ourselves, and I would like to bring some of

12   that quite likely to the Government's

13   attention.  We are planning on requesting

14   more time and Mr. Murphy has already

15   executed the speedy trial waiver that the

16   Court provided us with.

17        Given that there is a concurrent state

18   and federal prosecution in this case,

19   practically it's depleted some of Mr.

20   Murphy's financial resources and I've been

21   working with him to move things forward on

22   the discovery process, so we were hoping to

23   move things into later this spring in terms

24   of jury selection and continue our

25   conversations with the Government while I

1           get that work completed in hopes of

2           resolving this short of trial.

3               THE COURT:  So there's a companion

4           state case?

5               MR. ERWIN:  That's correct.

6               THE COURT:  And which case is the

7           driver?  Are they identical cases or are

8           they different?

9               MR. ERWIN:  They are identical.  They

10          arise out of the common nucleus of operative

11          fact.  I think that this case is likely the

12          driver between the state case -- I represent

13          Mr. Murphy in the state case as well so I am

14          familiar with everything.  I don't mean to

15          mislead the Court.  I do know what's going

16          on, but given the severity, the potential

17          severity of the federal case I am exploring

18          some angles that I have not previously done

19          and need some time to work my client in

20          terms of his ability to complete the work

21          that we need done.

22              THE COURT:  And how much time do you

23          estimate that will take?

24              MR. ERWIN:  I was going to ask for 60

25          days.

1      THE COURT:  I'm not asking you how much

2   time you're asking for.

3      MR. ERWIN:  Oh.

4      THE COURT:  I'm asking you how much

5   time you think it will take for you to do

6   what you just indicated you would like to

7   do.

8      MR. ERWIN:  I don't think it will take

9   very much time at all.  Frankly it's a

10  question of financial resources.  My client

11  has -- we think we can be getting it done in

12  the next probably six weeks to two months.

13     THE COURT:  Six weeks to two months.

14     MR. ERWIN:  That's correct.

15     THE COURT:  And does that depend upon

16  your client raising money or what is --

17     MR. ERWIN:  Yes.

18     THE COURT:  How do you estimate 60

19  days?  How have you calculated that as a

20  reasonable amount of time?

21     MR. ERWIN:  I've calculated he has been

22  looking for work.  He's been completing odd

23  jobs.  He's discussed with me what he has

24  available and I have an estimate of what it

25  will take to get this work done.  It sounds

```
 1            to me as if in approximately six weeks he
 2            will have the resources for --
 3                 THE COURT:  Why do you say that?  Are
 4            you relying upon him getting a job or are
 5            you assuming based upon the amount of income
 6            he is currently earning he can save that
 7            amount?
 8                 MR. ERWIN:  That he can save that
 9            amount, your Honor.
10                 THE COURT:  Based upon what he's
11            earning now or based upon him finding a job?
12                 MR. ERWIN:  Both.
13                 THE COURT:  So he needs to find a job
14            first.
15                 MR. ERWIN:  Yes.  And he has
16            interviewed.  He has a job offer that -- the
17            interview went very well.
18                 THE COURT:  Does he have a job offer?
19                 MR. ERWIN:  He's on the cusp of getting
20            one.
21                 THE COURT:  So he doesn't have a job
22            offer.
23                 MR. ERWIN:  No.
24                 THE COURT:  He believes he may get a
25            job offer.
```

1          MR. ERWIN:  That's correct.

2          THE COURT:  And from whom and what kind

3     of work is that?

4          MR. ERWIN:  Right now the job offer is

5     -- the anticipated offer is from Walmart in

6     a managerial position.  He's pursued another

7     opportunity with the Electric Boat company

8     in a welding shop, but the Walmart

9     opportunity has called him back.  He's been

10    through an interview and they're vetting his

11    application now.

12         THE COURT:  Is there a background

13    check?

14         MR. ERWIN:  There is, and that's the

15    concern.

16         THE COURT:  What are the charges in

17    this case?  The financial case?

18         MR. ERWIN:  No, this is a traveling

19    across state lines for illegal sexual

20    activity with a minor.

21         THE COURT:  I see.

22         (Pause.)

23         THE COURT:  Does the Walmart

24    application ask about the applicant's

25    criminal history?

1          MR. ERWIN:  I don't know whether the

2          application itself does, but he did notify

3          the interviewer in the course of the

4          interview about his legal situation.

5          THE COURT:  The first interview or the

6          second interview?

7          MR. ERWIN:  May I inquire?

8          (Counsel and Defendant confer.)

9          MR. ERWIN:  So there was one interview,

10         two positions.  The application does ask

11         about pending charges and he disclosed the

12         charges on the application which is what

13         they're following up on now.  One is for a

14         part-time stocking position and the other

15         one is for a shift supervisor position.

16         THE COURT:  You think the prospects of

17         someone hiring a person for a managerial

18         position for which -- or even a stocking

19         position for which they would need training

20         is likely in view of the possibility,

21         perhaps likelihood of a sentence of

22         incarceration?

23         MR. ERWIN:  I think it is a -- I mean I

24         can't speak for Walmart.  I've represented

25         numerous people and those who would put

1      their mind to it to find work, legitimate

2      work, have frequently done so.  And I

3      encourage my clients to do that.  Probation

4      in fact encouraged him to do that in his

5      bond package interview.  He's hit the ground

6      running.  Beyond that I can't speak to the

7      likelihood of Walmart's --

8          THE COURT:  Yeah.  I mean there

9      certainly are, you know, temporary jobs,

10     lots of jobs that don't require any training

11     that would likely be available nonetheless,

12     but it seems like a significant investment

13     of time for a company to devote when there

14     is a strong possibility that the individual

15     will not be available in the relatively

16     short future.  So I'm not certain now much

17     we should rely upon that in -- how much time

18     will it take to save the money if he doesn't

19     get this job?  You said he does have a part-

20     time job now?

21         MR. ERWIN:  His family has a company.

22     He's been doing work for them on an ad hoc

23     basis.  It's sort of an event support kind

24     of setup.  He worked the inauguration.

25     There is a possibility of him working the

1        Super Bowl.  He's not needed for that, but

2        he -- we spoke about his finances this

3        morning.  It sounds to me that he will have

4        approximately enough money in about the six

5        weeks' time that I estimated.  I think he's

6        receiving unemployment as well.

7              THE COURT:  Would his family assist him

8        if need be?

9              MR. ERWIN:  I have been -- I've

10        discussed that with him.

11              THE COURT:  All right.  So let's say he

12        raises the money in six weeks.  What do you

13        have to do after that?

14              MR. ERWIN:  I don't want to disclose

15        the defense strategy, but we need to --

16              THE COURT:  Well, no, I'm not asking

17        specifics.  Do you have to engage in another

18        process, how long will that process take?

19              MR. ERWIN:  I don't think it should

20        take very long.  I mean in terms of the work

21        I actually need done it's probably several

22        hours' worth.

23              THE COURT:  Okay.  All righty.

24              You know that if the trial is continued

25        to June you'll be required to file your JTM

1    in May?

2         MR. ERWIN:  Yes.

3         THE COURT:  And somewhere four to six

4    weeks in advance of that --

5         MR. ERWIN:  Thank you.

6         THE COURT:  -- and the jury clerk will

7    then begin to work on calling in a jury for

8    your case.

9         MR. ERWIN:  I understand.

10        THE COURT:  You feel confident that by

11   May you will either have this resolved or

12   know for certain that you're going forward?

13        MR. ERWIN:  I do feel confident in

14   that.

15        THE COURT:  And does the Government as

16   well?

17        MS. GIFFORD:  Yes, your Honor.

18        THE COURT:  Okay.  I think my jury

19   selection date is June 7th.

20        Mr. Fernandez, is that correct?  June

21   6th?  All right.  June 6th.

22        Mr. Murphy, are you amenable to

23   continuing your trial from March 7th to June

24   6th?

25        THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Do you understand that you

2     have a right to a speedy trial and you can

3     demand that trial in March that's currently

4     scheduled?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Have you discussed that

7     with your attorney?

8          THE DEFENDANT:  I have.

9          THE COURT:  And have you discussed the

10    consequences of going forward and the

11    consequences of waiving that right and

12    deferring your filing until June?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Have you decided that it's

15    in your best interest to defer the trial?

16         THE DEFENDANT:  I have.

17         THE COURT:  Would you like to sign a

18    speedy waiver excluding all the time through

19    June of 2017?

20         THE DEFENDANT:  Yes.  I've already

21    signed the form.

22         THE COURT:  You've already signed the

23    form?

24         THE DEFENDANT:  Yes.

25         THE COURT:  All right.

1           In consideration of the Defendant's

2       waiver of his speedy trial rights to enable

3       him to prepare for trial the Court finds

4       that the ends of justice warrant a

5       continuance to enable the Defendant to

6       launch a defense.

7           The case is continued for trial until

8       the 6th of June 2017 at 9:30.  Court will

9       enter a scheduling order with a joint trial

10      memo deadline.  Please read my chambers

11      practices and ensure that the content of

12      your JTM comports with it.  You will note

13      among other things it asks you to do is to

14      provide the content of your witness

15      testimony, so indicating that Mary Jones is

16      going to testify to facts and circumstances

17      surrounding the events is not responsive.

18      It is not helpful.

19          And so I would ask that you don't -- do

20      the standard thing but actually do what the

21      Court asked you to do so that I can make a

22      fair assessment of how much time the trial

23      will require and can schedule my time

24      accordingly and impanel a potential jury

25      that will be available for your trial in an

1          efficient and timely manner.

2                Thank you.

3                MS. GIFFORD:  Thank you, your Honor.

4                MR. ERWIN:  Thank you.

5                (Proceedings adjourned at 11:17 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        CERTIFICATE

 2

 3              I hereby certify that the foregoing 17

 4   pages are a complete and accurate transcription to the

 5   best of my ability of the electronic recording of the

 6   Status Conference in re:   UNITED STATES OF AMERICA vs.

 7   NICHOLAS MURPHY, Criminal No. 3:16-CR-00227 (VLB) held

 8   before The Hon. Vanessa L. Bryant, United States

 9   District Judge, in Hartford, Connecticut, on January

10   31, 2017.

11


          Suzanne Benoit
12   _____

13   Suzanne Benoit, Transcriber          Date: 1/5/18

14

15

16

17

18

19

20

21

22

23
```