UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

------------------------------ x
                               :
UNITED STATES OF AMERICA,       :
                    Plaintiff,  :     Criminal No.
                               :   3:16-CR-00227 (VLB)
          vs.                   :
                               :     June 5, 2017
NICHOLAS MURPHY,                :
              Defendant.        :
                               :
------------------------------ x

                              Federal Building
                              450 Main Street
                              Hartford, Connecticut

CHANGE OF PLEA HEARING

(Transcription from Electronic Recording)

Held Before:

          THE HON. ROBERT A. RICHARDSON
          United States Magistrate Judge

          Transcription Services of
          FALZARANO COURT REPORTERS, LLC
                 4 Somerset Lane
              Simsbury, CT  06070
                 860.651.0258
          www.falzaranocourtreporters.com

A P P E A R A N C E S:

For the Plaintiff:

        OFFICE OF THE UNITED STATES ATTORNEY
        450 Main Street - Room 328
        Hartford, Connecticut 06103
        860-947-1101
                BY:  NANCY V. GIFFORD, ESQ.
                     Assistant U.S. Attorney


For the Defendant:

        PATTIS & SMITH, LLC
        383 Orange Street - First Floor
        New Haven, Connecticut  06511
                BY:  DANIEL M. ERWIN, ESQ.

1          (Proceedings commenced at 11:15 a.m.)

2

3          THE COURT:  Good morning.  Please be

4     seated.

5          MR. ERWIN:  Good morning.

6          THE COURT:  We are here this morning on

7     the United States vs. Nicholas Murphy,

8     Docket Number 3:16-CR-227 VLB.  I'm Judge

9     Robert Richardson.

10          Will counsel please identify themselves

11     for the record?

12          MS. GIFFORD:  Good morning, your Honor.

13     Nancy Gifford on behalf of the United

14     States.  With me at counsel table is Special

15     Agent Amy Noto (phonetic) from the FBI.

16          THE COURT:  Good morning.

17          MR. ERWIN:  Good morning, your Honor.

18     Dan Erwin for the Defendant Nicholas Murphy

19     who is seated with me at counsel table.

20          THE COURT:  Good morning.

21          All right.  As I understand it Mr.

22     Murphy would like to change his plea; is

23     that correct?

24          MR. ERWIN:  That's correct.

25          THE COURT:  Thank you.

1    Mr. Murphy, the first matter that we

2    need to address before I can allow you to

3    potentially change our plea is the matter of

4    the referral of this proceeding to me as

5    well as the parties' consent to that

6    referral.

7    Just so that you know, Mr. Murphy,

8    there are two types of judges within the

9    federal system, district judges and

10   magistrate judges and they have different

11   types of responsibilities.  I am a

12   magistrate judge and without the referral of

13   a district judge and without your consent I

14   can't handle a proceeding such as this one

15   where a defendant in a criminal case

16   involving a felony is seeking to change his

17   plea from not guilty to guilty.  That

18   proceeding would typically be handled by a

19   district judge.  The district judge to whom

20   your case has been assigned, Judge Bryant,

21   has referred this proceeding to me to make a

22   recommendation to her as to whether she

23   should accept your guilty plea, and that

24   referral is for convenience purposes only.

25   If both parties consent to having this

1    proceeding before me, once it's over the

2    case will go back to Judge Bryant for all

3    future proceedings.

4        However, as I said I can't handle this

5    proceeding unless both parties consent to my

6    handling this proceeding.

7        Have you had a chance to discuss with

8    your attorney whether you would be willing

9    to have this proceeding before a magistrate

10   judge, sir?

11       THE DEFENDANT:  Yes.

12       THE COURT:  And do you understand that

13   you have the right to have the proceeding

14   before a district judge?

15       THE DEFENDANT:  Yes.

16       THE COURT:  Do you consent to having

17   this proceeding before me, sir?

18       THE DEFENDANT:  I do.

19       THE COURT:  Okay.

20       Does the Government consent to having

21   this proceeding before me?

22       MS. GIFFORD:  We do, your Honor.

23       THE COURT:  And do the parties have the

24   consent form?

25       MR. ERWIN:  We do.

1              THE COURT:  Very good.

2              MR. ERWIN:  We have -- pardon, it's

3       been a while since I've appeared in front of

4       you.  We have the petition to enter a plea.

5       I just can't recall if there was another

6       piece of paper that was needed.

7              THE COURT:  Yes, there is a consent

8       form for proceeding before a magistrate

9       judge.

10             COURTROOM DEPUTY:  I laid it on the

11      table.

12             MR. ERWIN:  I'm sorry.

13             THE COURT:  No worries.

14          (Pause.)

15             MR. ERWIN:  Sorry.  I didn't see one

16      when I came in.

17          (Pause.)

18             MR. ERWIN:  Is there another one by any

19      chance?

20             THE COURT:  This isn't our home court,

21      unfortunately.  We are visiting.  But I

22      think given the representation that was made

23      in open court we can proceed and then just

24      have a form that will be signed when we

25      break for the end of the day or the end of

1       the proceeding.  As long as the parties can

2       execute that and hand it to the Courtroom

3       Deputy before we go I think that's the

4       quickest way to handle this.

5           MR. ERWIN:  No objection to that.

6           THE COURT:  So I appreciate it.  Thank

7       you.

8           All right.  But based on the statements

9       that were made in open court so far and

10      we'll tie this up as I said by having the

11      actual form signed and filed, I do find that

12      Mr. Murphy understands that he has the right

13      to have this proceeding before a district

14      judge and that he has knowingly and

15      voluntarily waived that right and consented

16      to proceed before me.

17          Mr. Murphy, before I can take your

18      change your plea there are a number of

19      questions that I need to ask you while

20      you're under oath.  The purpose of asking

21      those questions is to make sure that you

22      know what you're doing, that you understand

23      your rights, that you understand the

24      consequences of changing your plea from not

25      guilty to guilty, and to make sure that you

1               are in fact guilty of the charge to which

2               you're offering to plead guilty because I

3               cannot accept a guilty plea from someone who

4               is not guilty of the offense to which

5               they're offering to plead guilty.

6                   If you don't understand any of the

7               questions that I ask you please let me know

8               and I'll try to rephrase them, okay?

9                   THE DEFENDANT:  Yes, sir.

10              THE COURT:  All right.  Could you

11             please stand and raise your right hand when

12             the Courtroom Deputy places you under oath,

13             sir?

14

15              NICHOLAS MURPHY, the Defendant herein,

16             was duly sworn by the Courtroom Deputy.

17

18              THE COURT:  Okay.  Mr. Murphy, you have

19             sworn to testify truthfully under oath so

20             please be advised that if you provide any

21             false statements to my questions you will be

22             liable for perjury or making a false

23             statement under oath.  Do you understand

24             that, sir?

25              THE DEFENDANT:  Yes.

1           THE COURT:  Thank you.

2           Can you please tell me your full name?

3           THE DEFENDANT:  Nicholas Bruce Murphy.

4           THE COURT:  Have you used any other

5       name, sir?

6           THE DEFENDANT:  No.

7           THE COURT:  Where were you born?

8           THE DEFENDANT:  Providence, Rhode

9       Island.

10          THE COURT:  So you are a U.S. citizen?

11          THE DEFENDANT:  Yes.

12          THE COURT:  How old are you, sir?

13          THE DEFENDANT:  27.

14          THE COURT:  And what level of education

15      have you had?

16          THE DEFENDANT:  Some college.

17          THE COURT:  Are you presently under the

18      influence of any alcohol, drugs or medicine,

19      sir?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  Have you had any alcohol or

22      any drugs or medicine within the past 72

23      hours, sir?

24          THE DEFENDANT:  (No audible response.)

25          THE COURT:  Are you now or have you

1      recently been under treatment by a

2      psychiatrist, psychologist or other mental

3      health provider?

4            THE DEFENDANT:  No.

5            THE COURT:  Okay.  How do you feel

6      today?  And by that I mean how is your

7      health, sir?

8            THE DEFENDANT:  Good.

9            THE COURT:  Good.  Is your mind clear?

10     Are you able to understand what's going on

11     in the courtroom today?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  Attorney Erwin, have you

14     had any difficulty communicating with Mr.

15     Murphy?

16           MR. ERWIN:  No, I have not.

17           THE COURT:  Do you have any doubts as

18     to Mr. Murphy's competence to proceed at

19     this time?

20           MR. ERWIN:  No, I don't.

21           THE COURT:  Very good.

22           Mr. Murphy, are you satisfied with the

23     services of your attorney?

24           THE DEFENDANT:  Yes, I am.

25           THE COURT:  Mr. Murphy, have you

1    received a copy of the document containing

2    the written charges against you, also known

3    as the indictment?

4         THE DEFENDANT:  Yes, sir.

5         THE COURT:  Have you had a chance to

6    discuss it fully with your attorney?

7         THE DEFENDANT:  I have.

8         THE COURT:  And do you understand the

9    charge, sir?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Okay.  Very good.  You may

12    be seated.  Thank you.

13         Mr. Murphy, I want to make sure that

14    you understand your rights, so please listen

15    carefully while I explain them to you.

16         The first and most important thing you

17    need to understand today is that you have

18    the right to continue with your original

19    plea of not guilty even if you are in fact

20    guilty of the charge against you.  If you

21    decide to continue with a plea of not guilty

22    you'll be entitled to a trial by a jury with

23    the assistance of an attorney at each and

24    every phase of the proceedings against you.

25    And in the event that you cannot afford an

1       attorney the Court can and will appoint an

2       attorney at no cost to you.  Do you

3       understand that, sir?

4           THE DEFENDANT:  I do.

5           THE COURT:  And if you decide to go to

6       trial you would be presumed innocent and the

7       Government would have to prove your guilt

8       beyond a reasonable doubt.  If the

9       Government were to fail to prove your guilt

10      beyond a reasonable doubt a jury would have

11      to find you not guilty.  Do you understand

12      that, sir?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Again, if you were to

15      continue with the original plea of not

16      guilty and go to trial, at any such trial

17      any witnesses for the Government would have

18      to come to court and testify in your

19      presence, and your attorney would have the

20      right to cross examine those witnesses and

21      to object to any evidence offered by the

22      Government.  Do you understand that, sir?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  And at a trial you would

25      have the right to testify if you chose to do

1         so, but you could not be required to

2         testify.  And if you decided not to testify

3         during a trial a jury would be instructed

4         that it could not hold that fact against

5         you.  Do you understand that, sir?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  If the case were to go to

8         trial you'd have the right to present

9         evidence in your defense and to require the

10        attendance of witnesses to testify in your

11        defense.  However, you would not be required

12        to present any evidence during your defense

13        or call any witnesses.  In the event that

14        you chose not to present any evidence or

15        call any witnesses, the jury would be

16        instructed that it could not hold those

17        facts against you.  Do you understand that,

18        sir?

19            THE DEFENDANT:  Yes.

20            THE COURT:  And you have additional

21        rights under the constitution.  You have

22        what's known as the right to remain silent

23        and you have something known as a privilege

24        against self-incrimination.  The right to

25        remain silent basically provides that you

1  have no obligation to speak or make any

2  statement at all, and the privilege against

3  self-incrimination basically provides that

4  you cannot be forced to produce evidence

5  against yourself in a criminal case.

6      In the event that you decide to go

7  forward with your change of plea today you

8  will be waiving or giving up both of those

9  rights.  More specifically, I'm going to

10  have to ask you questions here in open court

11  and you're going to have to answer those

12  questions, thereby waiving your right to

13  remain silent, and in answering my questions

14  you're going to have to acknowledge your

15  guilt, thereby giving up your privilege

16  against self-incrimination.

17      Do you understand the rights that I've

18  just explained to you, sir?

19      THE DEFENDANT:  Yes.

20      THE COURT:  Are you willing waive or

21  give up both your right to remain silent and

22  your privilege against self-incrimination in

23  connection with today's procedure, sir?

24      THE DEFENDANT:  Yes.

25      THE COURT:  Okay.  If you decide to

1　　　　　change your plea from not guilty to guilty

2　　　　　and Judge Bryant accepts your plea of

3　　　　　guilty, you'll be giving up your

4　　　　　constitutional right to a jury trial as well

5　　　　　as all of the other rights that I've just

6　　　　　described to you here in open court.  There

7　　　　　will be no trial of any kind.  Instead you

8　　　　　will be found guilty based on your plea of

9　　　　　guilty.  Do you understand that, sir?

10　　　　　　　　THE DEFENDANT:  Yes.

11　　　　　　　　THE COURT:  Sir, are you willing to

12　　　　　give up your right to a jury trial as well

13　　　　　as all of the other rights that I've just

14　　　　　explained to you here in open court?

15　　　　　　　　THE DEFENDANT:  Yes.

16　　　　　　　　THE COURT:  All right.  There is a

17　　　　　written plea agreement dated June 5, 2017.

18　　　　　Have you had a chance to read that plea

19　　　　　agreement, Mr. Murphy?

20　　　　　　　　THE DEFENDANT:  Yes.

21　　　　　　　　THE COURT:  Have you had a chance to

22　　　　　discuss it fully with your attorney?

23　　　　　　　　THE DEFENDANT:  I have.

24　　　　　　　　THE COURT:  Do you understand the

25　　　　　agreement?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Do you wish to sign the

3      agreement?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Okay.  In that case, sir,

6      if I can have you just for the moment sign

7      the signature line on page 9 of the

8      agreement -- excuse me, page 8 of the

9      agreement.

10          (Pause.)

11          THE COURT:  Thank you.  There is

12     another signature line that we'll get to

13     later in the proceeding.  What I like to do

14     is make sure we summarize and outline the

15     terms of the plea agreement first and that

16     you understand them before we get to the

17     next signature line.

18          THE DEFENDANT:  (Unintelligible.)

19          THE COURT:  Thank you.  And you can

20     hold onto that agreement up until the very

21     end of the proceeding.  I don't file it with

22     the Courtroom Deputy unless and until you

23     stand up and officially enter a plea of

24     guilty.  Okay, sir?

25          All right.  Attorney Gifford, could you

1           please summarize the terms of the plea

2           agreement?

3                 MS. GIFFORD: Thank you, your Honor.

4                 The plea agreement is a letter dated

5           today addressed to Attorney Erwin as well as

6           Attorney Pattis. It consists of 12 pages.

7                 On page 1 it states the Defendant

8           agrees to plead guilty to Count 1 of the

9           indictment charging him with interstate

10          travel with the intent to engage in illegal

11          sexual activity.

12                Page 1 sets forth the two elements that

13          the Government would be required to prove

14          beyond a reasonable doubt at trial in order

15          to sustain a conviction for this offense.

16                Page 2 sets forth the statutory

17          penalties for this offense and specifically

18          that the offense carries a maximum of 30

19          years of imprisonment. In addition, any

20          sentence of imprisonment must also carry a

21          term of supervised release of at least 5

22          years and as much as life, and the Defendant

23          understands that should he violate any

24          condition of supervised release he could be

25          required to serve a further term of

1   imprisonment of up to 5 years per violation

2   with no credit for time already spent on

3   supervised release.

4        Moreover, the Defendant understands

5   that by pleading guilty he will be required

6   to register as a sex offender upon his

7   release from prison and as a condition of

8   supervised release he understands that if he

9   commits certain qualifying offenses such as

10  illegal sexual activity with a minor,

11  kidnapping or human trafficking then the

12  Defendant would be required to serve a term

13  of not less than 5 years of imprisonment.

14       Defendant is also subject to a fine of

15  up to 250,000 and a special assessment of

16  $100 as well as an additional special

17  assessment of $5,000.

18       On page 3 of the agreement the

19  Defendant understands that the Court must

20  order restitution.  In addition, the

21  Defendant understands that the Court is

22  required to consider the sentencing

23  guidelines although it is not bound by them,

24  and the Defendant also understands that he

25  has no right to withdraw his guilty if his

1      sentence or the guideline application is

2      other than he anticipated.

3          The Government agrees to recommend that

4      the Court reduce by two levels the

5      Defendant's adjusted offense level based on

6      his prompt recognition and affirmative

7      acceptance of personal responsibility for

8      the offense, and in addition the Government

9      will file a motion with the Court

10     recommending that the Court reduce the

11     Defendant's adjusted offense level by 1

12     additional level based on his prompt

13     notification of his intent to enter a guilty

14     plea.

15         The Defendant understands that these

16     recommendations are conditioned on his

17     affirmative demonstration of acceptance of

18     responsibility by truthfully admitting the

19     conduct comprising the offense and

20     disclosing to the U.S. Attorney's Office and

21     Probation Office all requested information

22     including financial.

23         In addition, the Government reserves

24     its right to seek denial for the adjustment

25     for acceptance of responsibility if he

1   engages in any acts which indicate that the

2   Defendant has not terminated from his

3   criminal conduct, which could provide the

4   basis for an adjustment for obstruction of

5   justice or administration time impeding the

6   administration of justice, constitutes a

7   violation of a condition of release or

8   otherwise he seeks to withdraw his guilty

9   plea.

10      On pages and 4 and 5 we set forth the

11  parties' stipulation that the sentencing

12  guidelines.  The Defendant understands that

13  our stipulation is not binding on the Court

14  and that it does not set forth all the

15  conduct that may be considered by the Court

16  for determining the appropriate sentence.

17      The parties' guideline stipulation is

18  as follows:  His base offense level is 24

19  under U.S. Sentencing Guideline 2G1.3A4; 2

20  points are added because he unduly

21  influenced a minor; an additional 2 points

22  are added for the use of an interactive

23  computer service.  In this case it would be

24  a cellphone and as well as a computer

25  through the use of Facebook.  2 points are

1        added because the Defendant committed a sex

2        act.  3 are subtracted for acceptance of

3        responsibility was we just discussed, so

4        that results in a total offense level of 27,

5        which assuming a criminal history category

6        of 1 results in a range of 70 to 87 months

7        of imprisonment and a fine range of 25,000

8        to $250,000.

9            Defendant is subject to the mandatory

10       minimum of 5 years of supervised release and

11       could receive as much as life.

12           The parties reserve their rights to

13       seek a downward or upward department from

14       the 70 to 87 months imprisonment range as

15       well as the supervised release ranges.

16           On page 5 the parties reserve their

17       respective rights to appeal the sentence

18       imposed.

19           Pages 5 and 6 set forth the waiver of

20       certain trial rights many of which the Court

21       has already discussed.  And the Defendant

22       understands that by pleading guilty he is

23       waiving his trial rights and that if the

24       plea of guilty is accepted by the Court

25       there will not be a further trial at any

1       time.

2              There is also a waiver of the statute

3       of limitations.  This would only apply if

4       for some reason in the future the

5       Defendant's conviction was set aside.  If

6       that were to happen the Defendant agrees

7       that he would not raise a statute of

8       limitations defense as to any prosecution

9       that is not time barred on the date this

10      plea agreement was signed.

11             Continuing on page 6, the Defendant

12      acknowledges that he's entering into this

13      agreement and is pleading guilty freely and

14      voluntarily because he is guilty, and he

15      does so without any other promises or

16      benefits other than what is set forth in

17      this letter, and that nobody is threatening

18      him or forcing him or intimidating him to do

19      so.

20             In addition, the Defendant acknowledges

21      that this agreement is limited to the

22      parties and cannot bind any other federal or

23      state or local authority.

24             On page 7 the agreement highlights the

25      collateral consequences as a result of

1     today's proceeding.  The Defendant will be

2     adjudicated guilty of the offense to which

3     he's pled guilty and will be deprived of

4     rights such as the right to hold public

5     office, serve on a jury, possess a firearm

6     and ammunition, and in some states the right

7     to vote.

8          In addition, the Federal Bureau of

9     Prisons or the U.S. Probation Office will

10    collect a DNA sample from the Defendant for

11    analysis and indexing.

12         Continuing on page 7, the Defendant

13    acknowledges that he's been advised and

14    understands that he will be the subject of

15    federal and state sex offender registration

16    requirements and that those requirements may

17    apply throughout his life.

18         Defendant understands that pursuant to

19    these requirements he must register and keep

20    the registration current in the

21    jurisdictions where he resides, where he is

22    an employee and where he is a student.

23         The Defendant has been advised and

24    understands that he will be subject to

25    possible federal and state penalties for the

1    failure to comply with the sex offender

2    notification requirements, including

3    prosecution for failure to register under

4    federal law, which is punishable by a fine

5    or imprisonment.

6         As a condition of supervised release

7    the Defendant shall initially register with

8    the state sex offender registration in Rhode

9    Island, and he shall also register with the

10   state sex offender registration agency in

11   any state where he resides, is employed,

12   works or is a student as directed by the

13   Probation Office.

14        If the Defendant violates any condition

15   or term of this agreement or engages in any

16   criminal activity or fails to appeal at

17   sentencing the Government reserves the right

18   to void, that is not honor its obligation to

19   this agreement.  The parties agree that

20   there are no promises, agreements or

21   conditions other than those that are set

22   forth in this letter and it is signed by the

23   Government, the Defendant and his attorney.

24        On page 9 there is a signed stipulation

25   of offense conduct and relevant conduct.

1          Please note there's been on change from the

2          draft copy that was sent to chambers.  We

3          have changed the actual age of the minor to

4          an acknowledgment that the minor was less

5          than 16 and older than 13 in the final copy.

6               THE COURT:  Thank you.

7               MS. GIFFORD:  On page 10 there is a

8          rider concerning restitution that explains

9          what may be included in the Court's order

10         for restitution, and the consequences of

11         failing to make restitution payments.

12              And on pages 11 and 10 (sic) there are

13         10 additional conditions of supervised

14         release for this Defendant.

15              THE COURT:  Okay, Attorney Gifford.

16              Just for the record I noticed that on

17         page 5 of the plea agreement, and it was

18         certainly contained in Attorney Gifford's

19         thorough outline of the terms of the plea

20         agreement, but I just want to make clear for

21         the record that on page 5 of the plea

22         agreement the Defendant is not waiving his

23         right to appeal or collaterally attack his

24         conviction or sentence -- or rather his

25         sentence, and that the parties are reserving

```
 1          their rights to their respective appeal

 2          rights.  Is that correct?

 3               MR. ERWIN:  That is correct.  That is

 4          my intention.

 5               MS. GIFFORD:  That's correct as to the

 6          sentence, yes.

 7               THE COURT:  Yes.  Not the conviction.

 8               MS. GIFFORD:  Yeah.

 9               THE COURT:  Thank you.

10               All right.  Mr. Murphy, does the

11          written agreement that was just outlined by

12          the Assistant U.S. Attorney and that you

13          have in front of you there at Defense table

14          fully reflect your entire understanding of

15          the agreement that you've reached with the

16          Government?

17               THE DEFENDANT:  Yes.

18               THE COURT:  Other than the promises

19          that are contained in the written agreement,

20          has anyone made any promises to you that

21          have caused you to want to change your plea

22          from not guilty to guilty today, sir?

23               THE DEFENDANT:  No.

24               THE COURT:  Has anyone made any

25          promises to you as to what your sentence
```

1          will be, sir?

2                THE DEFENDANT:  No.

3                THE COURT:  Has anyone threatened you

4          in any way in an attempt to get you to plead

5          guilty today?

6                THE DEFENDANT:  No.

7                THE COURT:  Has anyone attempted to

8          coerce or intimidate you into pleading

9          guilty today?

10                THE DEFENDANT:  No.

11                THE COURT:  Is anyone forcing you in

12          any way, sir, to get you to plead guilty

13          today?

14                THE DEFENDANT:  No.

15                THE COURT:  Do you want to plead guilty

16          because you choose to do so voluntarily and

17          of your own free will?

18                THE DEFENDANT:  Yes.

19                THE COURT:  Thank you.

20                All right.  I want to discuss with you

21          the possible sentence and other penalties

22          that you can receive if you decide to

23          continue with your intention to change your

24          plea from not guilty to guilty, so please

25          listen carefully.

1          Mr. Murphy, if you decide to change

2     your plea from not guilty to guilty today

3     the Court can sentence you to a maximum term

4     of imprisonment of 30 years, a term of

5     supervised release for at least 5 years and

6     as much as life beginning at the end of any

7     period of imprisonment.

8          If you're placed on supervised release,

9     which is a form of court supervision, you'll

10    be required to satisfy certain conditions

11    while you're on supervised release,

12    including that you do not commit any crimes.

13    If you were to violate any condition of your

14    supervised release you could be required to

15    serve a further term of imprisonment of up

16    to 5 years with no credit for time already

17    spent on supervised release.  You will also

18    be required to register as a sex offender in

19    certain states, including but not limited to

20    Rhode Island.

21         Continuing on with the potential

22    penalties and consequences, you would face

23    or could face a fine as much as $250,000.

24    You would be required or could be required

25    to make restitution as set forth in the

1    rider concerning restitution on page 10 of

2    your plea agreement.

3         In addition, you can be required to pay

4    the cost to the United States Government of

5    any period of imprisonment, probation or

6    supervised release.  If a sentence of

7    imprisonment is imposed the applicable rate

8    would be $2,036.92 per month.  If a sentence

9    of probation or supervised release is

10   imposed the applicable rate would be $294.60

11   per month.

12        If a fine of more than $2,500 is

13   imposed you can be required to pay interest

14   on any fine amount that is not paid within

15   15 days of the date that you are sentenced.

16   In addition, you'll be required to pay a

17   mandatory special assessment of $100 on each

18   count of conviction and you will be further

19   obligated by 18 United States Code Section

20   314 to pay an additional special assessment

21   of $5,000 on each count of conviction unless

22   the Court finds you indigent.

23        Let me ask both lawyers if my statement

24   of the penalties and consequences is

25   correct.

1          MS. GIFFORD:  Yes, your Honor.

2          MR. ERWIN:  Yes, your Honor.

3          THE COURT:  Very good.  Thank you.

4          Mr. Murphy, do you understand these

5     possible consequences of changing your plea

6     from not guilty to guilty today?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Mr. Murphy, you have

9     advised me earlier in the proceeding that

10    you are a United States citizen, but the

11    Federal Court of Appeals requires me to

12    notify all defendants who are potentially

13    going to change their plea from not guilty

14    to guilty of the possible consequences of a

15    guilty plea on any immigration status.  So I

16    understand that you are a U.S. citizen, but

17    I'll ask you to please bear with me while I

18    advise you about the consequences if it

19    turns out you are not a U.S. citizen.

20         Under federal law there are a broad

21    range of crimes that are known as removeable

22    offenses.  Removeable offenses are offenses

23    for which a non-citizen can be deported or

24    removed from the country if he is found

25    guilty of these offenses or pleads guilty to

1　　　　　these offenses.  Removal and immigration

2　　　　　consequences are not controlled by this

3　　　　　court; they are the subject of a separate

4　　　　　proceeding.  And therefore, if you are not a

5　　　　　U.S. citizen no one, including your

6　　　　　attorney, can advise you with any certainty

7　　　　　as to the effect of your guilty plea on any

8　　　　　immigration status.

9　　　　　　　　Again, I know that you've represented

10　　　　to me that you are a U.S. citizen, but do

11　　　　you generally understand what I've just

12　　　　described to you, sir?

13　　　　　　　THE DEFENDANT:  Yes.

14　　　　　　　THE COURT:  Thank you.

15　　　　　　　I'm now going to address you regarding

16　　　　the sentencing guidelines, so please listen

17　　　　carefully while I do so.

18　　　　　　　The United States Sentencing Commission

19　　　　has issued guidelines that apply to your

20　　　　case.  Have you and your attorney had a

21　　　　chance to discuss how the sentencing

22　　　　guidelines might apply to your case?

23　　　　　　　THE DEFENDANT:  Yes.

24　　　　　　　THE COURT:  The sentencing guidelines

25　　　　are advisory guidelines under which the

1       Court calculates a recommended sentence

2       using the specific facts of each case.  The

3       calculation results in a guideline range of

4       possible sentences and the sentencing judge

5       in this case, Judge Bryant, must consider

6       the sentencing guidelines as a

7       recommendation that she sentence you within

8       that range.

9           Judge Bryant must also consider any

10      possible grounds for departing from the

11      guidelines.  She's permitted to tailor your

12      sentence in light of certain statutory

13      sentencing factors outside of the sentencing

14      guidelines.  However, she's required to

15      consider the sentencing guidelines in

16      deciding the appropriate sentence to impose.

17          As I said earlier, the guidelines are

18      not mandatory; they are advisory.

19          The sentencing guideline range for your

20      case will be determined after a document

21      known as a presentence report is prepared by

22      the United States Probation Office and you,

23      your attorney and the United States

24      Attorney's Office have all had a chance to

25      read and comment on that document known as a

1           presentence report.  Until then nobody can

2           be sure what the guideline for you case will

3           be.  Do you understand that, sir?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Now, your lawyer might have

6           advised you as to his opinion as to what

7           your guideline range will probably be, but

8           you need to understand that his prediction

9           might be wrong.  Do you understand that,

10          sir?

11          THE DEFENDANT:  Yes.

12          THE COURT:  And if it turns out that

13          the guideline range is higher than what you

14          and your lawyer had anticipated, the mere

15          fact that you expected to be sentenced

16          pursuant to a lower sentencing guideline

17          range will not provide a basis for

18          withdrawing your guilty plea or overturning

19          your sentence.  Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Thank you.

22          It's my understanding that you wish to

23          plead guilty to a one count indictment

24          charging you with travel within the intent

25          to engage in illicit sexual activity in

1       violation of 18 United States Code Section

2       2423(b). To prove that you are guilty of

3       this charge the Government must prove

4       certain things known as the elements of the

5       offense beyond a reasonable doubt.

6           The elements of the offense are listed

7       on page 1 of the plea agreement that you

8       have at the Defense table, so you may follow

9       along while I ask Attorney Gifford to please

10      outline the elements of the offense.

11          MS. GIFFORD:  Thank you, your Honor.

12          The elements of the offense are two.

13      First, that the Defendant traveled in

14      interstate commerce; and second, that the

15      purpose of that travel was to engage in

16      illicit sexual conduct with a with another

17      person.

18          THE COURT:  Thank you, Attorney

19      Gifford.

20          Mr. Murphy, I'm about to ask you what

21      you did that shows that you are in fact

22      guilty of the charge to which you're

23      offering to plead guilty today.  If you

24      would like a moment to speak with your

25      attorney this would be the perfect time to

```
1           do it.  Would you like a moment to speak

2           with your attorney, sir?  Okay.  Take your

3           time.

4                (Witness and counsel confer.)

5                THE COURT:  All right.  Are we ready to

6           proceed?

7                THE DEFENDANT:  Yeah.

8                THE COURT:  Mr. Murphy, can you please

9           tell me in your own words what you did that

10          shows that you are in fact guilty of the

11          offense to which you're offering to plead

12          guilty today?

13               THE DEFENDANT:  Yes, sir.  I traveled

14          from Rhode Island to Connecticut to meet

15          with this girl to engage in sexual

16          activities.  I should have known as the

17          adult that it was a poor decision on my part

18          and I should have known better.  She was

19          underage, and that I should have never taken

20          that drive to begin with, but I did.  So

21          when I did get there I should have known

22          better once I arrived the house that it was

23          a poor situation and shouldn't have engaged

24          in the activity.  However, I am somebody

25          that can't go backwards, so I just accepted
```

```
1              my (unintelligible) for what I've done.
2                   THE COURT:  Thank you.
3                   Is that satisfactory to the Government?
4                   MS. GIFFORD:  I may have missed it, I
5              just want to make sure that it was clear
6              that it was from Rhode Island to
7              Connecticut, he was crossing the state line.
8                   THE COURT:  He did say at the beginning
9              from Rhode Island to Connecticut as I
10             understood it.
11                  MR. ERWIN:  Yes.
12                  MS. GIFFORD:  Okay.  Thank you.
13                  THE COURT:  Thank you.  Is that
14             satisfactory?
15                  MS. GIFFER:  Yes, your Honor.  Thank
16             you.
17                  THE COURT:  All right.  Thank you, Mr.
18             Murphy.  You may be seated.
19                  Earlier I asked you to acknowledge that
20             you had read and understood the plea
21             agreement and you had indicated that you
22             did.  Let me just ask you in connection with
23             the answers you gave earlier, did you also
24             read page 9 of the plea agreement which is
25             the page labeled Stipulation of Offense
```

1          Conduct and Relevant Conduct?

2                THE DEFENDANT:  Yes.

3                THE COURT:  And did you understand

4          that?

5                THE DEFENDANT:  Yes.

6                THE COURT:  Are the statements on that

7          page true and accurate to the best of your

8          knowledge and belief, sir?

9                THE DEFENDANT:  Yeah.

10               THE COURT:  Okay.  You may page sign

11         page 9 at this point here in open court.

12               MR. ERWIN:  May I have just a moment

13         with Mr. Murphy?

14               THE COURT:  Yes.

15               (Witness and counsel confer.)

16               MR. ERWIN:  All set.

17               THE COURT:  Very good.  Thank you.

18               Mr. Murphy, I'm now going to ask the

19         Government to summarize what you did that

20         makes you guilty of the charge to which

21         you're offering to plead guilty today, so

22         please listen carefully.

23               Attorney Gifford, could you please tell

24         me what the Government would produce at

25         trial in the event that the case were to go

1              to trial that shows that Mr. Murphy is in

2              fact guilty of the offense to which he's

3              offering to plead guilty?

4                   MS. GIFFORD:  Thank you, your Honor.

5                   At trial the Government would meet the

6              burden of proof as to each element with

7              testimony from law enforcement, computer

8              forensic experts who reviewed both the

9              cellphone of the victim as well as the

10             cellphone of the Defendant, the victim's

11             statement, the victim's family's testimony,

12             the Defendant's statement both to law

13             enforcement and to Air Force Disciplinary

14             Board, as well as evidence including the

15             Facebook chat log between the Defendant and

16             the victim, phone records as well as items

17             seized from the Defendant's truck, and

18             expert testimony related to DNA found on

19             clothing of the minor victim.

20                  All of that would be used, your Honor,

21             to prove as follows.  That Murphy -- I'm

22             sorry, the Defendant met the victim through

23             an online dating website called Plenty of

24             Fish.  The Defendant and the victim

25             communicated through Plenty of Fish and then

1     later through Facebook messages.

2        Between mid-May and June of 2015 the

3     Defendant was in Rhode Island on leave and

4     he visited the victim in Connecticut.

5     During the visit the Defendant told the

6     victim that he was 19, at least the victim

7     would testify that the Defendant told her

8     that he was 19 when in fact he was 25.  And

9     the victim told the Defendant that she was

10    16 even though her Plenty of Fish profile

11    stated 19, but she was in fact younger than

12    16, being older than 13 and under 16.

13        On the evening of September 16, 2015

14    the Defendant drove from Rhode Island to

15    Moosup to visit the victim.  He drove to the

16    victim's home after he was informed that the

17    parents had gone to sleep.  They drove to a

18    secluded area and had vaginal sex in his

19    truck.

20        Around midnight the victim's mother

21    realized that the victim was not in her room

22    and called the police to report her daughter

23    missing, and the next morning, September

24    17th, the minor victim's mother found her

25    near the front  door waiting for it to be

1    unlocked.

2        The victim's mother questioned the

3    daughter about where she had gone and after

4    a while the victim told her mother that she

5    met a man who she knew from Facebook and had

6    sex.  The victim told her mother that the

7    man was the Defendant and that he was 19.

8    The Defendant's mother reported this

9    incident to the police department.

10       Two detectives went to the victim's

11   residence and spoke with the victim and her

12   mother and encouraged the victim to go to

13   the Connecticut Children's Medical Center to

14   have sex involved examination kit

15   administered and the results of that kit

16   would be submitted as evidence at trial.

17       The police seized the victim's clothing

18   and as discussed the DNA testimony would

19   show that the Defendant's DNA was located on

20   the victim's clothing.

21       On September 24th, 2015 a detective from

22   the Plainfield Police Department along with

23   a Rhode Island State Police officer and a

24   U.S. Air Force detective interviewed the

25   Defendant.  The Defendant admitted driving

```
1              from Rhode Island to Moosup, Connecticut to
2              meet a girl he had met on line.  He
3              initially denied having sex with the victim
4              but when pressed he eventually did admit to
5              having vaginal sex with the victim and to
6              engaging in oral sex with her.
7                   The Defendant told the detectives that
8              he knew her to be 16 and to be home schooled
9              and the Defendant agreed to submit to DNA
10             testing at that point.
11                  THE COURT:  Thank you, Attorney
12             Gifford.
13                  Mr. Murphy, did you hear what the
14             Government just outlined here in open court?
15                  THE DEFENDANT:  Yes.
16                  THE COURT:  And with respect to your
17             statements and conduct, was there anything
18             you heard that you disagreed with, sir?
19                  (Pause.)
20                  MR. ERWIN:  It's not a material
21             element, there's been some -- the
22             Government's recitation of facts of this
23             issue is correct.  It would be sufficient
24             evidence in our belief to support a
25             conviction.  With that said, there's the one
```

1      question whether Mr. Murphy ever told her

2      that he was 19 or that idea simply got out

3      there.  I think that if we could agree to

4      sort of hold that in abeyance.  I think

5      that's the core of Mr. Murphy's concern.  It

6      doesn't change the outcome of the case in

7      our view.

8           THE COURT:  I agree.

9           All right.  Thank you.  With that

10     clarification -- is that the only

11     clarification in terms of the Government's

12     presentation?

13          MR. ERWIN:  Yeah, that's the only

14     clarification.

15          THE COURT:  Thank you.

16          All right.  Mr. Murphy, have you and

17     your attorney prepared a document known as a

18     petition to enter a plea of guilty?

19          THE DEFENDANT:  Yes.

20          THE COURT:  All right.  Have you had a

21     chance to review that document, sir?

22          THE DEFENDANT:  I have.

23          THE COURT:  Are the statements

24     contained in that document truthful and

25     accurate to the best of your knowledge and

1     belief?

2               THE DEFENDANT:  Yes.

3               THE COURT:  Attorney Gifford, has the

4     Government had a chance to review the

5     petition?

6               MS. GIFFORD:  I have, your Honor.

7               THE COURT:  Okay.  Is it satisfactory

8     to the Government?

9               MS. GIFFORD:  Yes, your Honor.

10              THE COURT:  Thank you.

11              All right.  In that case will Mr.

12    Murphy and Attorney Erwin please sign that

13    petition here in open court?

14              (Pause.)

15              MR. ERWIN:  We're all set.

16              THE COURT:  Very good.  Thank you.

17              Mr. Murphy, based on everything that

18    I've seen and heard here in open court it

19    appears to me that you want to plead guilty

20    because you believe that you are in fact

21    guilty of the charge to which you're

22    offering to plead guilty and that you are

23    agreeing to plead guilty both voluntarily

24    and freely of your own free will.  Is that

25    correct?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  I'm about to

3      take your guilty plea, sir.  You have the

4      right to have the charge read to you here in

5      open court or you can give up or waive the

6      reading the of the charge and proceed

7      directly to your plea.  Do you wish to waive

8      or give up the reading of the charge, sir?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Okay.  Thank you.

11          In that case could you please stand

12      while the Courtroom Deputy puts you to your

13      plea.

14          COURTROOM DEPUTY:  In the case of

15      United States of America vs. Nicholas

16      Murphy, Case Number 3:16-CR-227 VLB, charges

17      you as to Count 1 of the indictment in

18      violation of 18 United States Code Section

19      2423(b), how do you plead?

20          THE DEFENDANT:  Guilty.

21          COURTROOM DEPUTY:  Your Honor,

22      Defendant has pled guilty to Count 1 of the

23      indictment.

24          THE COURT:  Thank you.  You may be

25      seated.

1          At this time can we ask Attorney Erwin

2     to please file the fully executed plea

3     agreement as well as the petition to enter a

4     plea of guilty.

5          MR. ERWIN:  Certainly.

6          THE COURT:  Thank you.

7          (Pause.)

8          MR. ERWIN:  May I interrupt for one

9     moment, your Honor?  It appears to me you're

10    about to review the Rule 1011 petition.  At

11    some point we will be heard on the issue of

12    detention and I intend to make something of

13    a novel argument in the signing of the

14    petition at this point.  My argument, I'm

15    hoping that I could be heard on that before

16    you enter the (unintelligible).

17         THE COURT:  All right.  So why don't

18    you be heard on that right now.

19         MR. ERWIN:  Certainly.  When the Court

20    fully takes up the order of detention I

21    think what I anticipate it will find, I

22    think the Government might agree on this for

23    the most part, that under 1831.43(a)(2)

24    detention is mandatory on conviction for the

25    crime that Mr. Murphy just pled guilty to.

1          We have no basis to challenge that.

2                What I would like to raise with the

3          Court is sort of constitutional procedural

4          argument in regards to when a conviction is

5          finalized, crystalized upon a guilty plea.

6          I fully concede that I'm sailing into a

7          stiff legal breeze here.  There is some

8          authority that squarely says that what I'm

9          asking of you is not the case, but it does

10         appear to be a split decision on the

11         surface.

12               The core of my argument is that, one,

13         and I don't mean this personally in any way

14         but as a magistrate judge the conviction is

15         not finalized resulting in a mandatory

16         conviction until it's accepted by the

17         Article III judge.  In fact, I think you

18         said in your remarks earlier that ultimately

19         Judge Bryant would be accepting this

20         conviction.

21               THE COURT:  She would be making the

22         decision whether to accept the plea.

23               MR. ERWIN:  Certainly.  Certainly.  And

24         we hope that we will.

25               THE COURT:  Yes.

1          MR. ERWIN:  This is in no way a scheme

2      to withdraw, you know --

3          THE COURT:  I understand.

4          MR. ERWIN:  The alternative, and this

5      is why I raise the issue now as opposed to

6      later, is that the Court may feel that the

7      conviction is finalized upon your signing of

8      the Rule 1011 petition order, and there's

9      some authority in the Fourth Circuit that

10     suggests that that is the case.

11         Our contention is that while Congress

12     has told you what you have to do upon

13     certain legal events, it's still a rule in

14     process and the Court has jurisdiction over

15     its own courtroom and when certain legal

16     events, in this case the act of conviction,

17     has been finalized.

18         So my fallback position is to ask you

19     to hold off on signing that until the day of

20     sentencing or a more amenable date so that

21     Mr. Murphy can remain at liberty.  In terms

22     of why that's appropriate beyond the

23     mandatory nature of the law, he has not

24     missed any court dates.  There's another

25     state case pending and we expect it will

1      resolve on Friday.  There are strong

2      interests in the petition and

3      (unintelligible) being at liberty in

4      preparing for sentencing, and efficiency

5      needs that were of the magistrate's act.

6           So to summarize, I think you have the

7      power to make that decision in court to

8      decide that it's not a firm conviction for

9      the purpose of 3143 at this point and delay

10     detention until the time of sentencing.

11          THE COURT:  Thank you.

12          MR. ERWIN:  And just pursuant to my

13     duty (unintelligible) the court circuit

14     cases, there's *US v. McGrann* from the

15     Eastern District of Virginia, 927 F.Supp.2d

16     279; *Moffitt* in the Western District of

17     North Carolina 2006, 527 F.Supp 474; a case

18     called --

19          THE COURT:  What was that?  I'm sorry.

20     You came out a little too fast on that.

21          MR. ERWIN:  Certainly.  *Moffitt* was

22     from the Western District of North Carolina,

23     527 F.Supp 474.

24          The distinction I would draw in the

25     case called *US v. Harden*, H-A-R-D-E-N, from

1       the Seventh Circuit, 758 F.3d 886.  The

2       holding of *Harden* is that magistrate judges

3       in fact don't have the power to accept

4       pleas, which we're not contending that you

5       lack the power to do so, and they noted in

6       there that in the Second Circuit as in the

7       case called *Williams*, in fact said that you

8       had the power to accept pleas.  Our argument

9       is somewhere in between that and that.

10      While you have the power to accept pleas you

11      also have the power to decide exactly when

12      the plea is accepted.  So I hope that makes

13      sense.

14           THE COURT:  It does.  You're right,

15      that is a novel argument at least in this

16      district.

17           MR. ERWIN:  Thank you.

18           THE COURT:  All right.  I appreciate

19      it.

20           Attorney Gifford, what's your position

21      on this?

22           MS. GIFFORD:  First, may I have copies

23      of the *McGrann* and *Moffitt* (unintelligible).

24           THE COURT:  That would be great.  Thank

25      you.

1          (Pause.)

2          MS. GIFFORD:  It's just -- sort of to

3     take a step back where we are, your Honor,

4     and we're just trying to take, the

5     Government is trying to take a consistent

6     position in all of these cases.

7          Under 18 USC 3143(a)(2) it requires

8     detention pending sentence if the Defendant

9     has been found guilty of an offense

10    described in -- and there's certain

11    subsections, and the one that we are focused

12    on is if the Defendant has been found guilty

13    of an offense described in 3142(f)(1)(a).

14    (f)(1)(a) includes a crime of violence for

15    which the maximum term of imprisonment is 10

16    years or more.

17          To find out what a crime of violence

18    includes we look at 18 USC 3156(a)(4)(c),

19    which defines a crime of violence as any

20    felony under certain chapters, in this

21    particular case it would be Chapter 117.

22    The Defendant's crime, which is 18 USC

23    2423(b) is under Chapter 117 and has a

24    maximum term of 30 years imprisonment.  It

25    appears that the only exception to mandatory

1          detention are, first, that the Court would

2          find a substantial likelihood of acquittal.

3          That's not relevant in this case.  Or

4          second, that the Government has recommended

5          no sentence of imprisonment and the Court

6          finds clear and convincing evidence that the

7          person is not likely to flee or pose a

8          danger.  This one is not applicable here

9          because the Government is not recommending

10         no sentence of imprisonment in this case.

11              Given that, the Government would also

12         then turn -- we did send this sort of

13         chronology of how we think things were going

14         to play out today to Defense counsel.  We

15         have been talking it through over the past

16         couple of days and we just recently came

17         upon this thought about whether there was

18         the finding of guilt which would be under

19         3143, the judicial officer shall order that

20         a person who has been found guilty of an

21         offense, whether that would be triggered a

22         magistrate's acceptance of a guilty plea or

23         would it be delayed until the district court

24         accepted your recommendation.

25              On that topic we did not find very much

1       case law, but the two cases that we found

2       that were explicitly on point both came out

3       of the Fourth Circuit in *US v. McGrann*, the

4       defendant's guilty plea before a magistrate

5       judge to conspiracy to distribute narcotics,

6       was found binding such that the magistrate

7       judge's acceptance of his plea that the

8       defendant -- means that the defendant has

9       been found guilty within the meaning of the

10      statute, requiring a judicial officer to

11      order a person who has been guilty of a

12      controlled substance offense with the

13      maximum sentence of 10 years or more, and

14      thus after accepting the guilty plea the

15      magistrate judge was required to order the

16      defendant's immediate detention pending

17      sentencing.  The defendant consented to the

18      magistrate judge conducting the plea hearing

19      at which he knowingly and voluntarily

20      pleaded guilty and the magistrate judge

21      accepted the plea on behalf of the district

22      court.

23          Again, that was *US v. McGrann*, it's out

24      of the Eastern District of Virginia and it's

25      from 2013.  And so the Government would rely

1        upon that, your Honor, that the facts are

2        very similar while the (unintelligible)

3        narcotics offense is still triggered by the

4        same statute.  And in here we have a

5        defendant who knowingly and voluntarily

6        agreed to plead guilty and agreed to allow a

7        magistrate judge to accept his guilty plea.

8        And that certainly the sentiment behind what

9        Congress intended here when it said once

10       you've been found guilty is met in this

11       case, when the magistrate judge accepts the

12       guilty plea, that's the time that he has

13       been guilty for purposes of this detention

14       provision.

15            And then one final thought is that in

16       effect I believe there is -- and Judge

17       Bryant, I'm not exactly sure when she

18       normally accepts her recommendation from a

19       magistrate judge, but my experience it's

20       just been a few days and that I don't know

21       of any party to sort of postpone that

22       decision closer to sentencing.  It would

23       trouble me given what happens between now

24       and sentencing to not have that accepted

25       given that there's going to be intense

1    questioning of the Defendant through

2    Probation.  If you weren't finally

3    adjudicated guilty while that was going on

4    it seems to me that we're asking for some

5    problems down the road.

6         THE COURT:  Okay.

7         MS. GIFFORD:  And as well as I don't

8    have any knowledge of authority to do so

9    (unintelligible).

10         THE COURT:  I appreciate that.  Thank

11    you.

12         Attorney Erwin, are you asking me to

13    delay acceptance of the plea or --

14         MR. ERWIN:  I have asserted two

15    positions, that one of -- my second fallback

16    position is that, one, is that I think you

17    can find as a matter of law when someone

18    pleads -- and you may not want to do this,

19    but I'll lay it out for you, that the

20    conviction is not final until the day of

21    sentencing in front of the Article III judge

22    as a broader rule.

23         The second is simply that you have the

24    discretion not to fully and formally accept

25    the plea until the later date, presumably at

1        sentencing.  So the answer to your question

2        is yes on that.

3                THE COURT:  All right.  Then how is --

4        I make a recommended ruling to Judge Bryant

5        which she then accepts and then sentencing

6        is scheduled.  I don't give you the

7        scheduling order unless and until --

8                MR. ERWIN:  Certainly.

9                THE COURT:  It's an artificial -- I

10       understand the (unintelligible), but I just

11       don't know that in the end it works for

12       Judge Bryant.  But --

13               MR. ERWIN:  I understand.  I have

14       advised Mr. Murphy that there was a good

15       chance of him not going home at the end of

16       the hearing today.  It is not going to turn

17       everything on its head, but I am seeking to

18       (unintelligible) that you would ask that it

19       be provisionally accepted, that to whatever

20       extent it there's a gray period and the

21       Court has discretion, that it be an

22       exercise.  I certainly would hope that it

23       works for Judge Bryant.  And one of my

24       concerns kind of flying by the seat of my

25       pants is that perhaps Judge Bryant or

1  yourself had already encountered this

2  situation and had a firm rule against it.

3  But I do think it could work with the system

4  in this case that everyone could accomplish

5  what (unintelligible) and Mr. Murphy could

6  remain out (unintelligible).

7  THE COURT:  All right.  Well, I don't

8  have firm rule having never encountered this

9  situation before today.  I appreciate your

10  arguments.

11  So why don't we take a two-minute

12  recess if we can and let me think about

13  that.

14  MR. ERWIN:  Thank you.

15  THE COURT:  Court's now in recess.

16  (Recess:  12:06 p.m. to 12:14 p.m.)

17  THE COURT:  Please be seated.

18  All right.  We are back from recess.

19  Have the parties signed the consent form by

20  the way?

21  MR. ERWIN:  We have, your Honor.

22  THE COURT:  Okay.  If we can file that.

23  All right.  The document -- thank you

24  -- is sufficient and it's consistent with my

25  earlier finding that the Defendant knowingly

1          and voluntarily waived his right to proceed

2          before a district judge and consented before

3          me.

4               With respect to the matter of detention

5          which we'll address shortly, but I agree

6          that I have to address it in fairness before

7          I either accept or reject the plea I have

8          reviewed the cases that the Government gave

9          me.  I have considered the arguments that

10         both sides have made, and I have conferred

11         with one of my judicial colleagues, and

12         while I understand and appreciate the

13         Defendant's request, novel as it is, I don't

14         believe I actually have the authority to do

15         that.  So I'm afraid I'm going to have to --

16         well, assuming I accept the plea, recommend

17         accepting of the plea which I haven't done

18         yet, I'm afraid the mandatory detention rule

19         is going to trigger.

20              MR. ERWIN:  We're grateful for your

21         consideration.

22              THE COURT:  Thank you.

23              So while I was in the back reading

24         materials I did have a chance to read the

25         petition to enter a plea and based on the

1          statements that were made here in open court

2          as well as the statements in the petition to

3          enter a plea and the remarks of the

4          Assistant U.S. Attorney, I do find that Mr.

5          Murphy is fully competent and capable of

6          entering an informed plea today; that he

7          understands the nature of the charges

8          against him; that he knows of his right to a

9          jury trial as well as all the other trial-

10         related rights that I described here in open

11         court; that he knows the maximum possible

12         sentence and other possible consequences of

13         changing his plea from not guilty to guilty

14         today.  And I further find based on the

15         statements made in open court by Mr. Murphy

16         that his plea is knowing and voluntary and

17         supported by an adequate factual basis as to

18         each of the essential elements of the

19         offence.

20             I reach that finding not just based on

21         the oral remarks made here in open court

22         from Mr. Murphy and from the Assistant U.S.

23         Attorney, but also on the statements

24         contained in the petition to enter a plea of

25         guilty.

1           Therefore, I'm going to recommend that

2      Mr. Murphy's plea of guilty be accepted by

3      Judge Bryant and the case will be referred

4      to the United States Probation Office for a

5      presentence investigation.  It is so

6      ordered.

7           I am signing the order page of the

8      petition to enter a plea of guilty and

9      filing the petition as well as the early

10     executed plea agreement with the Courtroom

11     Deputy.

12          Mr. Murphy, just to give you a sense as

13     to what happens next, a United States

14     Probation Officer will interview you

15     sometime after today's hearing and the

16     Probation Officer will prepare a document

17     that you've heard me refer to known as a

18     presentence report.  And that document is

19     going to ultimately get submitted to Judge

20     Bryant to help her determine the appropriate

21     sentence to impose.

22          Please bear in mind that the Probation

23     Officers work for the United States -- for

24     the court system basically, not for the U.S.

25     Attorney's Office and therefore your

1          cooperation with the Probation Officer will

2          generally be beneficial to you.

3                However, to the extent that the

4          document that the Probation Officer is going

5          to create his presentence report is going to

6          play a very important role in the

7          determination of your sentence, you should

8          carefully discuss with your attorney what

9          you're going to say to the Probation

10         Officer.  Do you understand that, sir?

11               THE DEFENDANT:  Yes.

12               THE COURT:  Okay.

13               Counsel for either party may submit to

14         the Probation Office its version of the

15         offense.

16               Mr. Murphy, you have the right to

17         object to items contained in or omitted from

18         the presentence report once it's prepared,

19         and your attorney must read and review the

20         presentence report with you prior to the

21         date set for submitting objections to it.

22               After receiving counsel's objections to

23         the presentence report the Probation Officer

24         shall conduct any further investigation and

25         make any revisions to the presentence report

1          that might be necessary.  The revised

2          presentence report will then be disclosed to

3          the Court and to counsel.

4               Mr. Murphy, your lawyer must read and

5          review the revised presentence report with

6          you prior to the sentencing hearing.  Judge

7          Bryant has issued an order which -- at this

8          time here in court governing the dates of

9          the presentence investigation.  I have blank

10         unsigned copies for the lawyers which my

11         Courtroom Deputy will hand you at the end of

12         the proceeding, but just to give you a heads

13         up on the dates they are as follows:

14              The presentence report must be

15         disclosed to the Defendant, counsel for the

16         Defendant and the Government on or before

17         July 17, 2017.  Counsel shall communicate to

18         the Probation Officer any objections to the

19         presentence report on or before July 31st,

20         2017.  The amended presentence report must

21         be disclosed to counsel and to the Court on

22         or before August 10, 2017.  Not later than

23         10 days before sentencing counsel for both

24         parties may submit sentencing memoranda to

25         the Court addressing any factual inaccuracy

1           in the final presentence report, the

2           guidelines calculations, the available

3           sentencing options including alternatives to

4           incarceration, any restitution issues, any

5           bases for a departure and any other factual

6           or legal issue relevant to sentencing.

7                As always, both lawyers are directed to

8           Rule 32 of the Local Rules of Criminal

9           Procedure to guide them in their careful

10          preparation for sentencing.  Sentencing will

11          be held on September 13, 2017 at 3:30 p.m.

12          in Judge Bryant's courtroom which is

13          Courtroom 3 for the record.

14               I am handing the signed order to my

15          Courtroom Deputy.

16               All right.  And we have already

17          addressed at least preliminary the issue of

18          detention.  Unfortunately I don't think I

19          have the discretion to do what the Defendant

20          has asked me to do on the issue of

21          detention.  Therefore, I'm going to have to

22          order the Defendant detained.

23               MR. ERWIN:  We understand that you have

24          (unintelligible).

25               THE COURT:  Okay.  Is there anything

1          else we need to address while we're in

2          court?

3                  MS. GIFFORD:  The Government, your

4          Honor, (unintelligible).

5                  THE COURT:  All right.  If we can

6          arrange that.  Yes, thank you.

7                  Mr. Murphy, just so that you

8          understand, I did give your counsel's

9          argument all the consideration I could.  I

10         took a recess which I don't always do and

11         conferred with another judge on the issue.

12         So this was not something that I do lightly,

13         and I'm sorry that there isn't another

14         avenue.

15                 MR. ERWIN:  It's really appreciated,

16         sir.

17                 THE COURT:  Thank you.

18                 Is there anything else we need to

19         address?

20                 MS. GIFFORD:  No, your Honor.  Thank

21         you.

22                 THE COURT:  All right.  Before we

23         recess court I have spoken to Judge Covello

24         next door who has advised me for the parties

25         -- I think the parties may have come in on

```
1          the next matter.  He might not be able to

2          handle something starting at 12:30 and so I

3          have offered to cover it for him, but we're

4          checking to see if that's going to happen.

5          So if you could sit tight for a few minutes

6          while I confer with Judge Covello about his

7          schedule, we'll see what we can do.

8              All right?   Thank you all.  Thank you

9          both counsel for being professional as

10         usual.

11             Good luck in the future, Mr. Murphy.

12             Court is now in recess.

13             (Proceedings adjourned at 12:23 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        CERTIFICATE

2

3             I hereby certify that the foregoing 64

4    pages are a complete and accurate transcription to the

5    best of my ability of the electronic recording of the

6    Change of Plea in re:  UNITED STATES OF AMERICA vs.

7    NICHOLAS MURPHY, Criminal No. 3:16-CR-00227 (VLB) held

8    before The Hon. Robert A. Richardson, United States

9    Magistrate Judge, in Hartford, Connecticut, on June 5,

10   2017.

11

                     *Suzanne Benoit*

12   _____

13   Suzanne Benoit, Transcriber          Date: 12/3/18

14

15

16

17

18

19

20

21

22

23